# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CRAIG R. WILBURN,** | Case No. 6:15-cv-01380-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN,** | |
| Commissioner of Social Security, | |
| Defendant. | |

Kathryn Tassinari and Mark Baron, HARDER, WELLS, BARON, & MANNING, P.C., 474 Willamette Street, Suite 200, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Herbert, Assistant U.S. Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Erin F. Highland, Special Assistant U.S. Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Craig Wilburn seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits. For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for the payment of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g);

*Hammock v. Bowen*, 879 F.2d 498, 501 (9th. Cir. 1989). "Substantial evidence" means "more

than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d

1219, 1222 (9th Cir. 2009) (citation and internal quotation marks omitted). It means "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

(citation and internal quotation marks omitted).

Where the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th

Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record and the Court may not substitute its judgment for

that of the Commissioner. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th

Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625,

630 (9th Cir. 2007) (citation and internal quotation marks omitted). However, a reviewing court

may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for Disability Insurance Benefits on April 26, 2011, alleging disability as

of May 1, 2010. AR 21, 214-20. Born in 1954, Plaintiff was 55 years old on the alleged disability

onset date and 58 years old at the time of his administrative hearing. AR 59, 214. He alleges

disability due to depression, anxiety, cognitive disorder, tinnitus, diverticulitis, and back and hip

pain. AR 242. The Commissioner denied his application initially and upon reconsideration, and

he requested a hearing before an Administrative Law Judge ("ALJ"). AR 166-69, 175-79. After

an administrative hearing, the ALJ issued an adverse decision on October 1, 2013. AR 21-61, 73-

128. The Appeals Council denied Plaintiff's timely request for review and, thus, the ALJ's

decision became the final decision of the Commissioner. AR 1-6. Plaintiff now seeks review in

this Court.

## B.   The Sequential Analysis

A claimant is disabled if he is unable to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §

432(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining

whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v.

Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive.

20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of

questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, he is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot perform such work, he is disabled. *Id.*

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001). The Commissioner bears the burden of proof at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). Conversely, if the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

The ALJ performed the sequential analysis. AR 21-61. At step one, the ALJ found

Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 23. At

step two, the ALJ concluded Plaintiff had the following severe impairments:

> bilateral sensorioneural hearing loss (SNHL); tinnitus; left hip arthralgia;
> mild narrowing of the lumbosacral disc with slight retrolisthesis of L5
> upon S1; generalized anxiety disorder; depression; somatoform disorder;
> thought disorder; cognitive disorder, NOS; personality disorder; and panic
> disorder without agoraphobia."

*Id.* At step three, the ALJ determined Plaintiff did not have an impairment or combination of

impairments that met or equaled a listed impairment. AR. 24.

The ALJ next assessed Plaintiff's RFC and found that he could perform medium work

with the following exceptions:

> He can frequently push or pull on the left. He can frequently engage in
> foot control operation on the left. He can frequently climb ramps or stairs,
> stoop, kneel, crouch, and crawl. The claimant can occasionally climb
> ladders, ropes, or scaffolds. He should avoid concentrated exposure to
> excessive noise. He should avoid all exposure to operational control of
> moving machinery, and unprotected heights. He should also avoid all
> exposure to hazardous machinery. The claimant can understand and carry
> out simple instructions, in a work environment free of fast paced
> production requirements, involving only simple, work-related decision,
> with few if any work place changes. Instruction must primarily be by
> demonstration. The claimant should have no job related to travel. The
> claimant should have no interaction with the public and very little (routine,
> brief) contact with co-workers.

AR 25.

At step four, the ALJ found that Plaintiff was not capable of performing his past relevant

work. AR 59. At step five, the ALJ concluded that, based on the testimony of a vocational expert

("VE"), Plaintiff could perform other jobs that exist in significant numbers in the national or

local economy, including hand packager, candy maker helper, and cleaner polisher. AR 59-60.

Accordingly, the ALJ found Plaintiff not disabled. AR 60.

## DISCUSSION

Plaintiff argues the ALJ erred by: (A) rejecting the lay testimony; (B) improperly assessing the medical opinion evidence; and (C) rendering an invalid finding at step five.

### A.  Third-Party Statements

Plaintiff asserts that the ALJ neglected to provide a germane reason to reject the testimony of his friends, Melissa and Joshua Haring. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation omitted). The ALJ must provide "reasons that are germane to each witness" in order to reject such testimony. *Id.* (citation and internal quotation omitted).

In June 2011, Ms. Haring and Mr. Haring jointly completed a Third-Party Adult Function Report in support of Plaintiff's disability claim. AR 284-91. Ms. and Mr. Haring were "not sure" how to respond to many questions on the form because they did "not live with" Plaintiff. AR 285-91. Nevertheless, they reported that "the past couple years have been hard" for Plaintiff due to pain and depression. *Id.* Ms. Haring and Mr. Haring observed that Plaintiff had "totally withdrawn from social activities," seemed to suffer from memory and motivation problems, and rarely left the house. AR 288-90.

The ALJ afforded only "some weight" to the opinions of Ms. and Mr. Haring "[f]or the same reasons that the claimant himself is not credible." AR 59. Specifically, the ALJ noted that Ms. and Mr. Haring "did not live with the claimant [such that they were] required to rely on his own reports of his abilities and limitations." *Id.* The ALJ also found that, "[t]o the extent that this report is based upon their personal observations, it would only reflect the presentation which the claimant, an incredible individual, chooses to make to others." *Id.* An ALJ may reject lay

testimony on same basis as the claimant's discredited subjective reports. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

To the extent it includes specifics, Ms. and Mr. Haring's testimony concerning Plaintiff's functional limitations closely tracks Plaintiff's subjective symptom statements.[1] Indeed, Ms. and Mr. Haring acknowledge this fact at various points in their report. *See, e.g.*, AR 291 (denoting that their responses were based, in large part, on what Plaintiff "has talked about with us" because "some of the questions are very personal [and] we don't [know] personal things about him or his routine"). The ALJ found Plaintiff not fully credible for a number of reasons, including his "minimization of unfavorable disorders and symptoms such as alcohol abuse," and Plaintiff does not now challenge that finding on appeal.[2] AR 27-58. Under these circumstances, the ALJ's reasons for finding Plaintiff less than fully credible are applicable to the lay statements provided by Ms. and Mr. Haring. The ALJ's evaluation of the third-party testimony is upheld.

## B. Medical Opinion Evidence

Plaintiff also contends that the ALJ erred in assessing the medical opinions of occupational therapist Christopher Park, social worker Hugh McCauley, and examining psychologist Wayne Taubenfeld, Ph.D.

### 1. Non-Acceptable Medical Sources

While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other sources" can be used to determine the severity of that

---

[1] The Court notes that, although Ms. and Mr. Haring generally attest to Plaintiff's pain and depression, they do not describe any particular limitations, such that their lay testimony is not, in fact, inconsistent with the ALJ's RFC.

[2] Pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. *See* SSR 16-39, *available at* 2016 WL 1119029 (superseding SSR 96-7p).

impairment and how it affects the claimant's ability to work. 20 C.F.R. § 404.1513. "Other sources" include, but are not limited to, vocational counselors and nurse practitioners. *Id.*; SSR 06-03p, *available at* 2006 WL 2329939. To disregard the opinion of an "other" medical source, or lay source, the ALJ need only provide a reason that is "arguably germane" to that witness. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010).

### a. Christopher Park

In May 2010, Mr. Park performed a one-time functional capacity evaluation to assess Plaintiff's physical functioning as part of his participation in vocational rehabilitation services. AR 375-83. The evaluation included a review of "[b]rief medical records," a clinical interview, and a number of strength and dexterity tests. AR 375-79. Mr. Park concluded that Plaintiff was physically limited to working at the light exertional level due to pain in his hips and back. AR 380.

Mr. Park's assessment was "not given significant weight" by the ALJ because it was internally inconsistent, as well as inconsistent with the other medical evidence of record. AR 31. In particular, the ALJ noted that Mr. Park's opinion that Plaintiff "could only stand or walk for one hour at a time" was contravened by the fact Plaintiff "only used Ibuprofen for pain relief," was observed "to be on his feet for 90 minutes total out of a 135 minute session," and had unremarkable examination findings and imaging studies. *Id.* The ALJ also found that Mr. Park's report was directly contradicted by the coterminous opinions of examining doctors DeWayde Perry, M.D., and Victor Lin, M.D. *Id.*

The ALJ did not err in assessing Mr. Park's opinion. Significantly, the other medical evidence of record indicates that Plaintiff is capable of working at the medium exertion level. Dr. Lin examined Plaintiff in April 2010, one month before Mr. Park's assessment. AR 369-72.

OPINION & ORDER – 8

Examination findings were essentially normal, such that Dr. Lin limited Plaintiff to "the 50-pound or medium physical demand category," provided that any imaging studies "show no significant slippage." AR 372; *see also* AR 473-74 (subsequent imaging studies of Plaintiff's hips and back revealing only minimal degenerative changes). Dr. Perry performed another physical capacities examination on Plaintiff in December 2011 and, again, assessed normal findings upon examination. AR 430-34. Dr. Perry recommended that Plaintiff "would benefit from a psychological or psychiatric exam" because his disability claim appeared to be based, in large part, on his psychological problems. AR 434. As such, Dr. Perry restricted Plaintiff to the medium exertional level. *Id.* Based his March 2012 review of the record, state agency consulting source Neal Berner, M.D., opined that Plaintiff could perform medium exertion work. AR 156-59.

Finally, the Court notes that, throughout the four-plus year adjudication period, Plaintiff rarely complained of hip or back pain, despite the fact that he frequently sought treatment for his abdominal issues and high blood pressure. AR 451-72, 569-70, 574-75, 577-80. Accordingly the ALJ provided germane reasons for discounting Mr. Park's assessment and the ALJ's decision is affirmed in this regard.

### b. Hugh McCauley

Between May and August 2010, Mr. McCauley provided mental health counseling to Plaintiff pursuant to his participation in vocational rehabilitation services. AR 384-86. Mr. McCauley noted Plaintiff's depression, anxiety, and memory problems. *Id.* Despite Plaintiff's active engagement in treatment, Mr. McCauley opined that Plaintiff's "acute anxiety is a significant limiting factor." AR 386. Accordingly, Mr. McCauley reported that Plaintiff was currently "not work ready." *Id.*

The ALJ discredited Mr. McCauley's opinion for two reasons. First, the ALJ found that Mr. McCauley's "conclusions are at odds with those of Mr. Browning, a psychiatric nurse practitioner who observed significant improvement in the areas of anxiety and depression." AR 38. Second, the ALJ noted that Mr. McCauley "does not specify why and in what manner the claimant is not work ready." *Id.*

Substantial evidence does not support these conclusions by the ALJ. Although an ALJ may reject lay evidence that is inconsistent with the record as a whole, here, Mr. McCauley's and Mr. Browning notes are compatible. Namely, Mr. Browning's chart notes from the same time period reflect that Plaintiff experienced depression, anxiety, suicidal thoughts, and insomnia. AR 391-97. Although Plaintiff initially reported an improvement in mood with the medication prescribed by Mr. Browning, that improvement plateaued and, eventually, subsided. *See* AR 391, 395 (Plaintiff describing an increase in depression and low energy to Mr. Browning in August 2010 and November 2010); *see also* AR 398-407, 437-49, 484-565, 590-602, 616-18 (subsequent evidence reflecting the persistence of Plaintiff's psychological symptoms).

The Commissioner is correct that an ALJ need not accept an opinion that is brief, conclusory, and inadequately supported by clinical notes or findings. Yet, in the case at bar, Mr. McCauley recorded his clinical observations of Plaintiff, which support his opinion that Plaintiff was not work ready. Critically, Mr. McCauley discerned that Plaintiff often paused to recall words or phrases, and it was "evident" that he struggled with "acute anxiety." AR 384-86. Mr. McCauley also wrote that Plaintiff's perspective—*i.e.*, that the world was harmful and detrimental to his health—was a "serious impediment to improved prognosis." AR 386. Given that Mr. McCauley was providing counseling to Plaintiff for his mental impairments, it is unclear what additional evidence in Mr. McCauley's notes and findings the ALJ would require in order

to consider Mr. McCauley's opinion adequately supported. This is particularly true given that, as discussed in greater detail below, Mr. McCauley's records are consistent with the later reports of Dr. Taubenfeld, who was the only acceptable examining or treating medical source in the record to provide opinion evidence concerning Plaintiff's mental functioning.

In the alternative, the Commissioner argues that any error was harmless because Mr. McCauley's opinion was "equivocal," "temporary," and rendered "for purposes of vocational rehabilitation services." The Court does not find this argument persuasive. The Commissioner is correct that Mr. McCauley's observations do not, by themselves, indicate that Plaintiff has been unable to work throughout the entire adjudicatory period. Nevertheless, when combined with the other evidence of record, they support a finding that Plaintiff became disabled on or around the alleged onset date. In other words, while the wording of Mr. McCauley's opinion suggests some expectation that Plaintiff may be able to return to work from a psychological standpoint, subsequent evidence establishes that his conditions did not, in fact, meaningfully improve. The ALJ thus erred in evaluating Mr. McCauley's opinion.

### 2. Acceptable Medical Source

There are three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983); *Lester*, 81 F.3d at 830. The ALJ must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830.

Dr. Taubenfeld provided two psychological assessments: the first in April 2011 and the second in June 2013. AR 408-24, 590-602. Dr. Taubenfeld also issued a letter one month after the ALJ's unfavorable decision clarifying his previous reports. AR 616-18.

### a.  April 2011 Assessment

Dr. Taubenfeld's first evaluation consisted of a structured clinical interview and nine objective tests. AR 408. Although Plaintiff's intellectual and achievement testing were in the average range, his memory scales and personality inventory revealed significant impairment. AR 411-18. Depression and anxiety inventories also reflected severe levels of impairment. AR 419. Dr. Taubenfeld diagnosed Plaintiff with cognitive disorder; major depression, severe, with psychosis; panic disorder without agoraphobia; posttraumatic stress disorder, in remission; dysthymia; social phobia; undifferentiated somatoform disorder; ADHD; alcohol dependence; avoidant personality disorder; dependent personality disorder; and schizoid personality disorder. AR 420. The doctor then endorsed a number of work restrictions and barriers to employment, all of which centered on Plaintiff's difficulties in sustaining attention, coping with emotional demands and workplace stressors, completing tasks in a timely manner, and responding appropriately to co-workers and supervisors. AR 423-24.

The ALJ determined that Dr. Taubenfeld's April 2011 opinion was "entitled to only partial weight" for three reasons. AR 44. First, the ALJ noted "Dr. Taubenfeld's conclusions are based on a single examination, and he was evidently unaware of the claimant's history, or the results of other examinations, such as by Dr. Beickel." *Id.* As a result, the ALJ found that Dr. Taubenfeld's findings were based on Plaintiff's self- reports, which the ALJ found not to be credible. Second, the ALJ remarked that Dr. Taubenfeld failed to explain how Plaintiff was able to sustain his past work despite his mental disorders, as these conditions would have been present in the 20 years before the alleged onset date because there was no indication of recent

deterioration. *Id.* Third, the ALJ stated that the doctor "finds diagnoses whose presence or at least extent is not supported by the overall record," noting the reports of Dr. Beickel, Mr. Browning, and the Lane Independent Living Alliance ("LILA") counselor. AR 44-45. Concerning Dr. Taubenfeld's "more extreme conclusions," the ALJ found they were "inconsistent with the opinion of Bill Hennings, Ph.D., reviewing psychologist for the state agency." AR 45.

As a preliminary matter, the fact that Dr. Taubenfeld was an examining source is not, in and of itself, a legally valid reason to discredit his opinion, particularly because there is no evidence, contradictory or otherwise, from any other treating or examining acceptable medical source. Further, Dr. Taubenfeld was not responsible for resolving the precise date on which Plaintiff's mental impairments became acute; rather, he was tasked with assessing Plaintiff's then-current functioning to "determine whether there are any mental, cognitive or emotional difficulties that would affect [his] ability to be gainfully employed, retrained or to work with Vocational Rehabilitation." AR 408, 616-18. As such, the fact that Plaintiff's underlying mental conditions may have existed before the alleged onset date, but to a different degree, is a not a legally valid reason to afford less weight to Dr. Taubenfeld's opinion.[3] Likewise, the fact that aspects of Dr. Taubenfeld's report are inconsistent with some of the other evidence of record is not a basis to reject it. Rather, where an examining doctor's opinion is contradicted by another doctor's opinion, specific and legitimate reasons are required. *Lester*, 81 F.3d at 830.

Moreover, substantial evidence does not support the ALJ's determination that Dr. Taubenfeld's opinion was based predominantly on Plaintiff's subjective symptom

---

[3] There is little evidence in the record that pre-dates Dr. Beickel's March 2010 evaluation, so the ALJ's assertions regarding Plaintiff's functioning before the alleged onset date are mere speculation. In any event, the record reveals that Plaintiff first became suicidal after being "laid off work" in December 2010. AR 83, 349, 590-602, 616-18.

statements. Dr. Taubenfeld's report is extensive and carefully links each conclusion to an

objective medical basis, including his clinical observations and Plaintiff's test results. *See, e.g.*,

AR 422 (Dr. Taubenfeld diagnosed severe depression because "there is great consistency in all

testing as there is elevated scale on the MCMI-III, high-score on the Beck Depression Inventory,

and the CAARS self-esteem scale displays elevation indicative of poor self-concept"). There is

no indication that Dr. Taubenfeld's opinion was more heavily based on Plaintiff's self-reports

than the objective clinical findings. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)

(noting that "when an opinion is not more heavily based on a patient's self-reports than on

clinical observations, there is no evidentiary basis for rejecting the opinion") (citation omitted).

     In addition, the medical evidence from Dr. Beickel, Mr. Browning, and the LILA

counselor, when read in its entirety, is largely consistent with Dr. Taubenfeld's assessment. *See

Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (reversing the ALJ's decision where

"the ALJ developed his evidentiary basis by not fully accounting for the context of materials or

all parts of the testimony and reports" and instead paraphrased the "record material [in a] not

entirely accurate" manner). The Court further notes that Dr. Beickel examined Plaintiff once in

March 2010 and the only medical records she reviewed were two emergency room chart notes

from 2007. AR 360-68. Thus, her review of the record, as well has her relationship with Plaintiff,

was less extensive than Dr. Taubenfeld's. In any event, Plaintiff reported to Dr. Beickel poor

sleep, nightmares, suicidal thoughts, seeing "shadowing figures," and having "minor visions."

AR 363-64. He described having some good days, but always followed by bad days. AR 364.

Dr. Beickel observed that Plaintiff became tearful on several occasions and "was not readily able

to compose himself." AR 363. According to Dr. Beickel, the only test administered (the MMPI-

2) yielded "extreme scores and invalid results" due to Plaintiff "endorsing a great many items as a plea for help." AR 366.

Dr. Beickel diagnosed Plaintiff with "Major Depression, recurrent, without psychotic features—severe"; "Dyssomnias NOS with primary and intermittent insomnia, inadequate amount of sleep and rest, nightmares and bad dreams"; "Generalized Anxiety Disorder with social avoidance"; "Panic Disorder with features of agoraphobia"; "Alcohol Abuse (rule out, as he was using to self-medicate)"; "Nicotine Dependence"; and "Personality Disorder with avoidant features and schizoid lifestyle." AR 366-67. In the narrative portion of her report, she opined that "Plaintiff needs to be on psychotropic medication and in therapy [and] needs to have someone step in and provide supportive and emergency caretaking." AR 367. Outside of noting his physical limitations, the only other thing mentioned in Dr. Beickel's narrative report was "the differing pieces of information in his file"—namely, whether Plaintiff sustained a minor gunshot wound in the past or had a history of Xanax abuse. *Id.*

Unlike Dr. Taubenfeld, Dr. Beickel did not articulate any concrete work-related restrictions. Nevertheless, her report is consistent with Dr. Taubenfeld's conclusion that Plaintiff suffers from severe mental impairments, which significantly interfere with his ability to function. The aspects of Dr. Beickel's report that the ALJ relies on as incongruent—*i.e.*, the invalidity of MMPI-2 results and her diagnoses of depression without psychosis—are inconsequential given the overall tone and content of her assessment. This is particularly true in light of the fact Plaintiff reported hallucinations to Dr. Beickel, but she merely interpreted them as insomnia related, and she found that the MMPI-2 test results were skewed precisely because Plaintiff was "extremely depressed and anxious." AR 363-66.

The LILA counselor's chart notes, from October 2010 through March 2011, also reflect the severe and cyclical nature of Plaintiff's anxiety and depression, with accompanying "voices and visions." AR 398-407. For instance, in December 2010, during one of Plaintiff's brief periods of improvement, the LILA counselor was "concerned" about Plaintiff's mental stability. AR 403-04. Immediately prior to ceasing vocational rehabilitation services with LILA, Plaintiff reported anxiety attacks and hearing "someone else's voice" in his head; his counselor described him as a "chameleon," in that Plaintiff "will present as doing well [and try] to become like the person he is with [a] protective device," and noted that his "mental difficulties . . . warrant longer term counseling than I can provide." AR 405. As discussed above, Mr. Browning's chart notes reflect the cyclical, but severe, nature of Plaintiff's mental impairments. At the time he stopped treatment with Mr. Browning in February 2011, Plaintiff was reporting depression and anxiety, with poor sleep and suicidal thoughts. AR 388.

Under these circumstances, the fact that Dr. Hennings, the state agency consulting source, opined that Plaintiff could perform work consistent with the RFC in July 2011 does not constitute substantial evidence to discount Dr. Taubenfeld's opinion. *See Pitzer*, 908 F.2d at 506 n.4 (reversing the ALJ's rejection of an examining doctor where the only inconsistent evidence was from the state agency consulting source). The ALJ erred in affording less weight to Dr. Taubenfeld's April 2011 opinion.

### b.  June 2013 Assessment

Dr. Taubenfeld's second evaluation was comprised of a structured clinical interview and three objective tests, each of which indicated "both intellectual and social/emotional dysfunction," as well as "memory loss." AR 590-98. The doctor reasserted his initial diagnoses and stated that Plaintiff was "not a good candidate for work at this time," and his "prognosis for improvement was poor," despite the fact that he had been sober for the last six months and in

OPINION & ORDER – 16

treatment. AR 592, 596-97. He opined that Plaintiff was moderately limited in his ability to "understand, carry out, and remember simple one or two-step instructions"; severely limited in his ability to "maintain concentration and attention, persistence or pace," "adapt to the stresses common to a normal work environment," and "maintain regular attendance"; and extremely limited in his ability to "relate and interact with supervisors, coworkers, and the public." AR 598. In a corresponding Mental Residual Functional Capacity Form, Dr. Taubenfeld checked boxes reflecting that these impairments would interfere with numerous workplace requirements, including the ability to carry out simple instructions and maintain attention and concentration, ten to fifteen percent of the time. AR 599-601.

The ALJ gave "little weight" to this assessment because it was based on Plaintiff's subjective statements and inconsistent with the records of nurse practitioner Amanda Lies, the Options counselors, and state agency consulting source Joshua Boyd, Ph.D. AR 52. The ALJ also found that Dr. Taubenfeld's most recent opinion was entitled to less weight because it was "inconsistent even with his own earlier opinion, while the record in general does not show a pattern of deterioration." *Id.* Additionally, the ALJ remarked that Plaintiff's attempts at work after the alleged onset date failed not because of his mental impairments but rather because "employers were not hiring, or hired only for limited periods." *Id.*

Here, the ALJ's conclusion that Plaintiff's conditions did not deteriorate is based on isolated quanta of evidence and therefore neither represents a legally sufficient reason, nor is it supported by the record. *See Garrison v. Colvin*, 759 F.3d 995, 1013-14 (9th Cir. 2014) (reversing the ALJ's rejected of a treating nurse practitioner's assessment of moderate and moderately-severe mental limitations where the ALJ "manufactured a conflict by identifying two or three reports of improvement in [the claimant's] mental health"). Rather, the treatment records

that post-date Dr. Taubenfeld's 2011 opinion generally show that, although his symptoms waxed and waned, Plaintiff continued to show significant disruption in functioning due to his mental impairments. For example, in 2012, Plaintiff was unable to attend Thanksgiving dinner with his daughter because he "felt physically down" due to the fact he was experiencing "a lot of anxiety." AR 504-05; *see also* AR 508-10 (Plaintiff denoting that he was in a "really dark place" in November 2012, one week after reporting that he had been "feeling really good"). As such, his counselors at Options routinely described him as depressed and anxious, with suicidal ideation. *See, e.g.*, AR 486-87, 492-93, 496-97, 500, 504-05, 507-09, 516, 532, 546, 552. In the chart notes that most immediately precede the ALJ's unfavorable decision, Plaintiff continued to endorse significant levels of anxiety, as well as the presence of good days and bad days. AR 609-14.

Like all of the treatment providers that preceded her, Ms. Lies diagnosed Plaintiff with persistent depressive disorder, anxiety disorder, and personality disorder upon examination. AR 443-49. Although Ms. Lies did not provide any assessment related to Plaintiff's mental functioning, she did note Plaintiff's frequent reports of depression, anxiety, and insomnia between November 2011 and November 2012, as well as his occasional reports of brief improvement. AR 437-49, 567-68, 571-73, 576, 581-86.

More importantly, the clinical interview and objective tests performed by Dr. Taubenfeld revealed deterioration in Plaintiff's functioning. AR 592-97. Notably, Plaintiff's scores on all three of the objective tests administered increased, reflecting a worsening of symptoms. *Compare* AR 418-19, *with* AR 594-95. As before, Dr. Taubenfeld carefully linked each conclusion in his 2013 report to an objective clinical finding, such that there was not a sufficient basis for the ALJ to determine that Dr. Taubenfeld's most recent opinion was based largely on

Plaintiff's self-reports. Indeed, before concluding that Plaintiff was "not a good candidate for work," Dr. Taubenfeld documented Plaintiff's various test results and diagnoses, and expounded upon what that meant in terms of Plaintiff's functioning. AR 595-97. Given this evidence, the fact that Dr. Boyd, who never examined or treated Plaintiff, opined that Plaintiff could perform work consistent with the RFC does not constitute substantial evidence, particularly because Dr. Boyd's assessment predated Mr. Taubenfeld's second evaluation, as well as numerous counseling sessions at Options. *See* AR 156 (Dr. Boyd completed his review of the record in March 2012).

Lastly, the ALJ is correct that Plaintiff continued to look for work through early 2011. AR 405-07. Specifically, Plaintiff had been volunteering part-time at a recycling center, anywhere from a few hours per week to a few hours per day, as part of his receipt of vocational rehabilitation services. AR 403-07. In fact, vocation rehabilitation "hir[ed] a job coach" to monitor and accompany Plaintiff on his volunteer shifts. AR 407; *see also* AR 101-03 (Plaintiff testifying that he would have found it difficult to complete this work without his job coach). Plaintiff was hopeful that he would be able to obtain paid work through the recycling center but was never hired because there "was no money in the budget."[4] AR 405.

During that time, Plaintiff's counselor repeatedly questioned his ability to maintain employment in light of his mental impairments. AR 402-06. Furthermore, the VE indicated that work performed with the assistance of a job coach was considered sheltered, as opposed to competitive, employment. AR 126. In any event, the fact that Plaintiff sought, but ultimately

---

[4] While there are passing references to other temporary work in the record, there is no meaningful information concerning these positions except Plaintiff's statements, which reflect that he was unable to meet demands of those jobs due to his allegedly disabling conditions. AR 592. In 2012, Plaintiff began volunteering again part-time again at the recycling center, work which he described as "anxiety provoking." AR 545-48. It is unclear from the record how long this volunteer stint lasted.

OPINION & ORDER – 19

failed, to obtain employment before Dr. Taubenfeld's first evaluation, and subsequently applied for disability benefits, is not a basis to reject Dr. Taubenfeld's second evaluation. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). The ALJ erred in affording less weight to Dr. Taubenfeld's June 2013 opinion.

### c.  November 2013 Letter

In his post-decisional letter, Dr. Taubenfeld clarified that he had reviewed Plaintiff's longitudinal treatment records before rendering his opinions. AR 616. He explained that the limitations he attested to were based on "test data," as opposed to Plaintiff's subjective reports. *Id.* Dr. Taubenfeld then recapitulated Plaintiff's underlying impairments and the data on which they were based. AR 617-18. He also reiterated that Plaintiff was currently unable to work due to "the combination of ADHD, anxiety, low memory, somatization, and personality disorders, and depression and psychosis." AR 618. Dr. Taubenfeld concluded by emphasizing that the purpose of his evaluation was for the receipt of vocational rehabilitation services and not social security benefits, such that "if there was any bias it would appear to make [Plaintiff] look good, not bad." *Id.*

Although there is no dispute that it properly constitutes part of the record, the ALJ did not have the opportunity to consider this letter as part of her decision. AR 5. Regardless, it further indicates that the ALJ's reasons for discrediting Dr. Taubenfeld's opinions were not supported by substantial evidence.

In sum, the ALJ committed legal error that is not harmless in weighing the medical opinion evidence concerning Plaintiff's mental impairments. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2012) (only mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

OPINION & ORDER – 20

## C. Step Five Finding

Plaintiff argues that the ALJ's step five finding is erroneous because the dispositive hypothetical question posed to the VE did not account for all of his limitations. This argument is well-taken. As discussed above, the ALJ wrongfully rejected the opinions of Mr. McCauley and Dr. Taubenfeld. Because the ALJ failed properly to consider the concrete work-related limitations of function described by Dr. Taubenfeld in Plaintiff's RFC, the ALJ erred in relying upon the VE's testimony. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (if a VE's "hypothetical does not reflect all the claimant's limitations, then the . . . testimony has no evidentiary value") (citations and internal quotation marks omitted). Accordingly, the ALJ's ultimate decision is not supported by substantial evidence and remand is necessary.

## D. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The United States Court of Appeals for the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.

> If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

As discussed above, the ALJ erred by failing to provide legally sufficient reasons, supported by substantial evidence, for disregarding Mr. McCauley's and Dr. Taubenfeld's opinions. The record is replete with evidence demonstrating the seriousness of Plaintiff's mental impairments; although he engaged in regular treatment over a several year period, he consistently experienced depression, anxiety, and cognitive problems at a level that significantly interfered with his daily functioning and ability to work. AR 384-407, 437-49, 484-565. These symptoms

persisted even after Plaintiff stopped drinking. AR 592, 616-18. Plaintiff also has undergone

numerous psychological assessments related to his work-place functioning, the most recent of

these (transpiring in June 2013) reflecting that his prognosis was poor, even with treatment.

AR 597. Finally, the Commissioner has not pointed to, and an independent review of the record

does not reveal, any evidence that casts into serious doubt the debilitating extent of Plaintiff's

mental impairments. *See* ECF 15 (Def.'s Resp. Br.) at 9-10, 15 (noting only the opinions of

Dr. Beickel and the LILA counselor, as well as the cyclical nature of Plaintiff's mental

conditions).

Therefore, the record has been fully developed and there are no outstanding issues left to

be resolved. At the hearing, Plaintiff's counsel asked the VE whether a person with the

limitations identified by Dr. Taubenfeld would be able to maintain competitive employment.

AR. 121-22, 124-27. The VE testified that a person who is so limited is unemployable. *Id.* Thus,

Plaintiff's mental impairments render him disabled. *See, e.g.*, *Delgado v. Astrue*, 2013 WL

786440, at *7 (D. Or. Feb. 28, 2013) (remanding for an award of benefits where the claimant's

mental impairments were not properly incorporated into the RFC and the VE testified that with

such impairments the claimant would be unemployable).

## CONCLUSION

The Commissioner's decision is REVERSED and this case is REMANDED for an award

of benefits.

**IT IS SO ORDERED**.

DATED this 25th day of July, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge